Raymond J. HUGHES, Jr.,
Plaintiff–Appellant,

v.

Dale MEYER, John Buss and Robert
Combs, Defendants–Appellees.

No. 88–2761.

United States Court of Appeals,
Seventh Circuit.

Argued March 27, 1988.

Decided July 27, 1989.

James E. Doyle, Jr., Doyle & Ritz, Madison, Wis., for plaintiff-appellant.

David T. Flanagan, Asst. Atty. Gen., Wisconsin Dept. of Justice, Timothy J. Ya-

nacheck, Straub & Schuch, Madison, Wis., for defendants-appellees.

Before BAUER, Chief Judge, KANNE, Circuit Judge, and HENLEY, Senior Circuit Judge.[*]

HENLEY, Senior Circuit Judge.

Raymond J. Hughes, Jr. and his brother, Ronald Hughes, brought suit in federal district court pursuant to 42 U.S.C. § 1983 against two Sauk County, Wisconsin, deputy sheriffs and a Wisconsin Department of Natural Resources (DNR) conservation warden. The Hughes brothers alleged that the defendants violated their rights under the fourth amendment to the United States Constitution by arresting them for false imprisonment without probable cause. The brothers also named the conservation warden as a defendant in pendent state claims for false arrest and trespass. The district court granted defendants' motions for summary judgment as to the federal claims on the ground that the defendants were protected by qualified immunity. Having dismissed the federal claims, that court declined to exercise jurisdiction over the plaintiffs' pendent state law claims. Only Raymond Hughes appeals from the orders of the district court. We affirm.

The Hughes brothers own one-hundred-sixty acres of vacant land in Sauk County, Wisconsin. On the final day of the 1987 deer-hunting season, the brothers went to their land for the purpose of hunting deer. There they observed someone driving a truck on their property. The truck went into the hay fields on the land because it was having difficulty climbing a grade on the muddy road and may have gone off the road by as much as twenty feet. The occupants of the truck were defendant-appellee John Buss, who is a conservation warden of the DNR, and his wife Victoria Buss. The truck bore no official DNR markings. The warden and his wife had two untagged deer carcasses and at least Mrs. Buss may have been deer hunting earlier that day. Ronald asked the Busses why they were on the land and accused them of trespassing. Buss identified himself as a game warden and stated that he was investigating complaints of illegal hunting. In response to a request from Ronald, Buss produced identification. Ronald was infuriated with Buss because of his belief that Buss was trespassing. His conversation was aggressive, and, according to the district court, he was "boisterous, loud and upset." According to Buss, one or both of the brothers accused another DNR officer of having contributed to the death of their father.

Buss radioed for assistance from the Sauk County Sheriff's Department and the DNR. Ronald asked Raymond to call the police on the brothers' radio and Raymond complied. Raymond returned to the Buss truck in response to his brother's request to witness that "this fella's getting belligerent with me." Ronald then told Raymond, "this guy is a real smart aleck and I want you to get down some of the things he said on paper." Raymond went to the brothers' truck, returned with pencil and paper, and began to write down the license number and a description of Buss's truck. Buss said to Ronald, "So you are holding me here against my will." Raymond laughed and said, "No, that's not what he said. That's what you'd like for him to say, but that's not what he said." Raymond believed that the microphone of Buss's radio was switched on.

Buss told Ronald that he had called the sheriff and Buss's superior officer. He told Ronald that his superior would not come through the mud on the brothers' property, and suggested that they move out to the road, but Ronald replied, "No way. We're not going out to the road." Buss asked Ronald what he would do if Buss drove out to the road and Ronald replied, "We'll have to see." Ronald had a loaded rifle in a sling on his shoulder, but neither of the brothers held their rifles in a threatening way during the conversation with Buss. Nor did they attempt to pre-

[*] The Honorable J. Smith Henley, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

vent Buss from leaving by standing in front of his truck.

Raymond wanted to go hunting. According to the district court, he "unloaded his rifle in an obvious fashion, dropping ammunition to the ground and then holding the rifle in the air for Buss to see." He got into the Hughes's truck and drove further onto the property, calling out to Ronald that he was going hunting. When he returned approximately twenty minutes later, he saw three or four police officers approaching the Buss truck.

One of the officers directed Ronald to put away his loaded rifle, which he was still carrying on his shoulder. Ronald initially refused, but then complied when the officer requested in a nice way that he do so. The entire group then drove to Troy Village Road nearby, arriving at approximately the same time as DNR Warden Supervisor Leonard Cloutier, defendant-appellees Meyer and Combs, and another officer. Meyer and Combs obtained Buss's account of his encounter with the Hughes brothers. Meyer and Combs also talked to the officer who had arrived earlier and had asked Ronald to put away his rifle. On the basis of the statements they had received, and after referring to the applicable Wisconsin statutes, Meyer and Combs determined that they had probable cause to believe that Ronald had committed the crime of false imprisonment and that Raymond had aided and abetted his brother in the commission of that crime. The officers arrested the brothers and placed them in the Sauk County jail. After twenty-four hours Ronald and Raymond were released on bail. They remained under the conditions of bail until December 17, 1986, at which time the district attorney declined to prosecute them. The district court found that Buss neither recommended nor requested the brothers' arrest.

On appeal, Raymond Hughes contends that the district court erred in granting defendants' motion for summary judgment. He argues that a reasonable jury could find that the defendants did not have a good faith, reasonable belief that they had probable cause to arrest him, and that therefore a genuine issue of material fact exists precluding summary judgment. *See* Fed.R. Civ.P. 56(c).

■ However, what a jury could have found is not at issue in deciding a summary judgment motion on the issue of qualified immunity. This circuit has recently held that, even though pertinent facts may be in dispute, the question whether immunity attaches is always one for the judge to decide. *Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988); *Rakovich v. Wade,* 850 F.2d 1180, 1201–02 (7th Cir.) (en banc), *cert. denied,* — U.S. —, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). We apply the "clearly erroneous" standard of review to the district court's determination that " 'a reasonable police officer in like circumstances [c]ould have acted as the defendants did.' " *Jones,* 856 F.2d at 995 (quoting *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988)).

■ Probable cause for an arrest exists if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Probable cause is to be determined in a "practical, nontechnical" manner, *id.* (quoting *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)). The inquiry into the existence of probable cause raises questions of "probabilities ... the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar,* 338 U.S. at 175, 69 S.Ct. at 1310; *see also United States v. Watson,* 587 F.2d 365, 368 (7th Cir.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1055, 59 L.Ed.2d 95 (1979). Probable cause requires more than bare suspicion, but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false. *Brinegar,* 338 U.S. at 175, 176, 69 S.Ct. at 1310, 1311; *United States v. McDonald,* 723 F.2d 1288, 1295 (7th Cir.1983), *cert. denied,* 466 U.S.

977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984). The Court recognized in *Brinegar* the ambiguity of situations with which the police are often confronted, and consequently noted that the rule of probable cause permits mistakes reasonably made. 338 U.S. at 176, 69 S.Ct. at 1311.

But even in the absence of probable cause for an arrest, qualified immunity provides officers with an additional layer of protection against civil liability. *See Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3041, 97 L.Ed.2d 523 (1987) (fourth amendment violation, although by definition unreasonable, does not foreclose additional reasonableness inquiry for purposes of qualified immunity); *id.* 107 S.Ct. at 3049 (Stevens, J., dissenting) (majority's holding provides two layers of insulation from liability); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1347–48, 1348 n. 15 (7th Cir.1985) (opinion of Coffey, J.) (distinction exists between standard used in determining existence of probable cause and less stringent standard used in determining officer's reasonable belief as to validity of probable cause).

■ Police officers are generally protected by qualified immunity if their allegedly unlawful actions meet the test of " 'objective legal reasonableness' ... assessed in the light of the legal rules that were 'clearly established' at the time" the actions were taken. *Anderson*, 107 S.Ct. at 3038 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 819, 102 S.Ct. 2727, 2738, 2739 (1982)); *see also Klein v. Ryan*, 847 F.2d at 372. Although the right of freedom from arrest without probable cause is beyond a doubt clearly established, more is required: *Anderson* mandates an inquiry into the facts surrounding the officer's action in order to determine whether "in the light of preexisting law the unlawfulness [was] apparent." 107 S.Ct. at 3039; *see also Klein;* 847 F.2d at 372.

■ Appellant has cited no authority, and our research has disclosed none, clearly establishing the unreasonableness of an arrest in circumstances analogous or similar to those confronting Meyer and Combs. *See Rakovich*, 850 F.2d at 1212. Nor do we believe that such a finding of unreasonableness would be warranted in light of the facts and controlling law. The crime of false imprisonment is defined in Wis. Stat. § 940.30: "Whoever intentionally confines or restrains another without the person's consent and with knowledge that he or she has no lawful authority to do so is guilty of a Class E felony." The restraint element of false imprisonment may consist of threats of force, or of conduct causing the plaintiff to feel a reasonable apprehension that force may be used, even if not expressly threatened. W. P. Keeton, D. B. Dobbs, R. E. Keeton, D. G. Owen, *Prosser and Keeton on Torts* § 11 at 49 (5th ed. 1984). Ronald's statement, "we'll have to see" when Buss asked what would happen if Buss attempted to drive away, accompanied by Ronald's possession of a loaded rifle, could reasonably have led the officers to believe that the foregoing definition of restraint had been satisfied. More central to this appeal, however, is whether Raymond could reasonably have been suspected of aiding and abetting his brother's acts.

Criminal liability for aiding and abetting is established by Wis. Stat. Ann. § 939.05(1), (2)(b). The elements of aiding and abetting are (1) conduct, either verbal or overt, which as a matter of objective fact aids another person in executing a crime; and (2) intent that the conduct will provide such assistance. *State v. Ivy*, 119 Wis.2d 591, 598, 350 N.W.2d 622, 626 (1984).

The information Buss provided to Meyer and Combs warranted a belief that Raymond was cooperating with his brother. He did whatever his brother requested, and Buss's statement to the officers that either Ronald or Raymond blamed DNR personnel for the death of their father could have provided some additional evidence supporting the existence of probable cause. True, Raymond's acts of calling the sheriff and writing down information about the Buss truck would not be criminal in themselves. However, under Wisconsin law, intent to aid and abet may be inferred from conduct, and the mere intent to assist, if it becomes necessary, may be sufficient. *State v.*

*Cydzik*, 60 Wis.2d 683, 697, 698, 211 N.W.2d 421, 429, 430 (1973); *see State v. Sharlow*, 110 Wis.2d 226, 239 n.11, 327 N.W.2d 692, 699 n.11 (1983) (quoting the legislative history to § 939.05). Thus, a defendant need not commit an act constituting an element of the underlying crime in order to aid and abet the crime, *State v. Marshall*, 92 Wis.2d 101, 122, 284 N.W.2d 592, 601 (1979), and circumstantial evidence may be used to establish criminal liability. *See Frankovis v. State*, 94 Wis.2d 141, 150, 287 N.W.2d 791, 795 (1980). Appellant's acts could reasonably, although perhaps mistakenly, be viewed as intentionally assisting Ronald in his alleged plan to hold Buss until the sheriff arrived. Qualified immunity is designed to shield from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Meyer's and Combs's actions did not obviously violate that standard, and accordingly we find that the district court's conclusion of qualified immunity is not clearly erroneous.

We turn next to appellant's federal claim against Buss. Hughes claims that Buss violated his fourth amendment right to freedom from unreasonable seizure by providing Officers Meyer and Combs with false information concerning the confrontation between Buss and the Hughes brothers. Buss essentially contends that his statements to the officers cannot subject him to liability under § 1983 because they were not made in his capacity as a state official. Rather, he contends, his statements to the police were the equivalent to those a private citizen would make after calling for help and while reporting the details of an alleged crime. Inasmuch as private citizens are not normally suable under § 1983 for merely reporting a crime, neither should his statements subject him to potential liability, Buss argues. To this contention Hughes simply responds that Buss acted in his official capacity. While the parties' formulations approach the relevant legal principles, we find it necessary to define the issues somewhat more precisely. We must determine, not merely whether Buss acted as a state official or as a private citizen, but more specifically, whether he acted under color of state law, something which legal precedent tells us that private citizens, as well as state officials, are capable of doing. *E.g., Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186–187, 66 L.Ed.2d 185 (1980).

■ Before Buss's conduct can be brought within the ambit of § 1983, it must have occurred under color of state law, as well as having deprived appellant of a federally guaranteed right. *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988). Not every action by a state official or employee is to be deemed as occurring "under color" of state law. Action is taken under color of state law when it is " 'made possible only because the wrongdoer is clothed with the authority of state law....' " *Id.* (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)); *see also Lopez v. Vanderwater*, 620 F.2d 1229, 1236 (7th Cir.1980) (state official cloaked with official power and purporting to act under color of official right acts under color of state law). Conversely, state officials or employees who act without the cloth of state authority do not subject themselves to § 1983 suits. Thus, we have held that officers of the St. Louis Police Department (SLPD) assigned to a federal drug abuse agency did not act under color of state law by participating in a raid initiated by the federal agency, and which occurred outside of the SLPD's normal jurisdiction, even though one officer identified himself during the raid as a member of the SLPD. *Askew v. Bloemker*, 548 F.2d 673, 677 (7th Cir.1976) ("mere assertion that one is a state officer does not ... mean that one is acting under color of state law"). Similarly, we held that an assistant state's attorney who signed a petition to initiate a judicial inquiry into a person's mental condition did so as a private person, and therefore did not act under color of state law notwithstanding that he added his official title to his signature. *Byrne v. Kysar*, 347 F.2d 734, 736 (7th Cir.1965), *cert. denied*, 383 U.S. 913, 86 S.Ct. 902, 15 L.Ed.2d 668

(1966). We have noted that "acts committed by a police officer even while on duty and in uniform are not under color of state law unless they are in some way "related to the performance of police duties." *Briscoe v. LaHue*, 663 F.2d 713, 721 n. 4 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). A case somewhat analogous to this one is *Norton v. Liddel*, 620 F.2d 1375 (10th Cir.1980), in which the court found that a sheriff's actions in providing facts upon which a criminal information was based were essentially those of a private citizen and thus were not performed under color of state law. *Id.* at 1381–82.

The facts of this case would appear to more strongly compel a conclusion that Buss did not act under color of state law than did the facts in *Norton*. While true that Buss is a law enforcement officer, his authority presumably does not extend to the general enforcement of state law; he is a game warden, charged only with enforcing the state's game laws, not the full panoply of criminal laws such as those against false imprisonment. In any case, Buss's acts of describing his encounter with the Hughes brothers was functionally equivalent to that of any private citizen reporting to the police the details of an alleged criminal act. His status as a DNR official did not clothe him with greater authority to make statements to the police about the occurrence than any other citizen would possess. Thus, we conclude that Buss did not act under color of state law by virtue of his employment by the DNR.

That does not quite end our "under color" inquiry, however. A private person may also incur § 1983 liability by engaging in joint action with state officials to deprive a person of a federally protected right. *Dennis*, 449 U.S. at 27–28, 101 S.Ct. at 186–187; *Hudson v. Chicago Teachers Union Local No. 1*, 743 F.2d 1187, 1191 (7th Cir.1984). But private parties are not state actors when they merely call on the law for assistance, even though they may not have grounds to do so; "[t]here must be a conspiracy, an agreement on a joint course of action in which the private party and the state have a common goal." *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 435 (7th Cir.1986), *cert. denied*, 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987). Hughes has not alleged a conspiracy or agreement between Buss and the arresting officers. In fact, his allegations regarding their respective liability are quite discrete: the officers assertedly lacked probable cause to make an arrest, while Buss allegedly gave them false information. Nor do the circumstances speak of conspiracy. The district court found, and appellant does not contest, that Buss did not make any recommendation or request that the brothers be arrested. Rather than manifesting any foreknowledge or planning with respect to the brothers' arrest, Buss and the officers to all appearances merely responded to an unforeseen incident.

Because we conclude that Officers Meyer and Combs are protected by qualified immunity, and that Buss did not act under color of state law, the decision of the district court granting summary judgment to all defendants is affirmed. As the federal claims were dismissed before trial, the pendent state claims were also properly dismissed in the absence of any independent basis for federal jurisdiction. *Maguire v. Marquette Univ.*, 814 F.2d 1213, 1218 (7th Cir.1987). Of course, our affirmance is without prejudice to any state law cause of action appellant may be entitled to lodge in the courts of Wisconsin.