958 F.2d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Paul EVANS, Plaintiff-Appellant,
v.
Patrick MOKRY, Kevin Glynn, Daniel Swick, et. al.,
Defendants-Appellees.
 No. 91-2041.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 10, 1992.
Decided March 19, 1992.
 
 Before BAUER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff, Paul Evans, initiated this action in the Circuit Court of Cook County for arrest without probable cause and malicious prosecution, allegedly constituting violations of the Fourth and Fourteenth Amendments. The defendants petitioned for removal to the United States District Court for the Northern District of Illinois and filed a motion for summary judgment on the grounds that they had probable cause to arrest Mr. Evans and/or that they had qualified immunity. Mr. Evans appeals the district court's April 10, 1991, grant of summary judgment and entry of judgment in favor of the defendants. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 On June 18, 1986, at approximately 10:00 p.m., James Duffie was severely beaten by a group of six to nine young men. The defendants Walsh and Haddad, Chicago police officers, arrived at the scene and spoke with eye-witnesses Angela White and Bernard Victor. White identified the plaintiff as being among the group of people who had beaten Duffie. After interviewing White and Victor, Officers Walsh and Haddad related White's story to two detectives, Jack Hines and defendant George Patton. Officer Walsh filled out a preliminary report and stated therein that "Witness further identified 1 offender as 'Paul Evans.' " After completing the preliminary report, Walsh and Haddad's involvement in the case ended. Soon thereafter, Detectives Patton and Hines interviewed White at her home; she repeated that the plaintiff was among the people who had beaten Duffie. The following day, two other detectives, Patrick Mokry and Kevin Glynn, also questioned White about the Duffie beating. White repeated to detectives Mokry and Glynn that she recognized the plaintiff among the group that had beaten Duffie.
 
 
 4
 The name Paul Evans was familiar to the detectives because they had interviewed Mr. Evans the same day Duffie was beaten, June 18. Mr. Evans' sister, Pricilla Joy Evans, had been reported missing the prior evening. On the morning of June 18, several members of the Evans family and their friends and neighbors conducted a search for Pricilla. Mr. Evans found his sister's half-naked body lying near railroad tracks in the area. Later that day, around 4:30 or 5:00 p.m., Mr. Evans talked with detectives Swick, Mokry, Glynn, and Patton about his sister's disappearance and the discovery of her body. Mr. Evans told the detectives that he believed that James Duffie was responsible for his sister's death. Mr. Evans told the detectives that he had overheard James Duffie bragging that he had had sexual intercourse with a girl and had left her near the railroad tracks. Mr. Evans also told the detectives that Duffie had scratches on his face and had run away from Mr. Evans.
 
 
 5
 A week later, on June 24, Assistant State's Attorney Kenneth Zelazo interviewed Ladell Bryant, Andre Laughlin, and Paul Evans at the Area Two Violent Crimes office. Laughlin, Bryant, and Mr. Evans were each suspected of participating in the beating of James Duffie. Separately, Laughlin and Bryant related to Zelazo the following version of events. At around 7:00 p.m. on June 18, Laughlin and Bryant met with Paul Evans and two other friends from the neighborhood, Clarence Bell and a boy known as Chris. Mr. Evans told Laughlin, Bryant, Bell, and Chris what he had overheard Duffie say. Both Mr. Evans and Bryant also told the group that they had seen scratches on Duffie's face. Soon thereafter, Mr. Evans asked Bryant to get Duffie to come to them so that the group could confront him. Later in the evening, as the group was walking in the area, they encountered Duffie on the street. The group confronted Duffie, who denied having killed Pricilla. Chris had a baseball bat and began swinging it at Duffie. Duffie wrestled the bat away from Chris, but was knocked to the ground in the process. Chris held Duffie down on the ground with his foot, pulled the bat away from Duffie, and began using the bat to strike Duffie. At that point several of the others began hitting and kicking Duffie. Neither Bryant nor Laughlin specifically identified Mr. Evans as having hit or kicked Duffie. R.27 Ex.C, Sworn Statements of Andre Laughlin and LaDell Bryant.
 
 
 6
 The detectives and Zelazo confronted Paul Evans with the statements of Bryant and Laughlin. Mr. Evans admitted that most of Bryant's and Laughlin's statements were true, but denied participating in the beating of Duffie. Mr. Evans stated that, at the time of the beating, he was sitting in his car watching. Soon thereafter, he drove away. After completing their statements, Bryant, Laughlin, and Mr. Evans left the station.
 
 
 7
 On June 25, after reviewing the evidence, Zelazo approved charges of aggravated battery and attempted murder for Mr. Evans, Laughlin, and Bryant. Detectives Patton, Mokry, Glynn, and Sam Lacey arrested Mr. Evans that same day. On July 1, Duffie died as a result of the injuries sustained in the beating. The attempted murder charges against Bryant, Laughlin, and Mr. Evans were changed to murder charges. On July 16, the state court held a preliminary hearing. At that hearing, Angela White testified that she saw Mr. Evans with the group beating James Duffie, but she never saw Mr. Evans strike Duffie. White testified that she did not see Mr. Evans touch the baseball bat, and that she never saw Mr. Evans get closer than fifteen or twenty feet from Duffie. The trial court found no probable cause to proceed to trial against Paul Evans, and he was released from custody.
 
 
 8
 On June 17, 1988, Mr. Evans initiated this suit against detectives Mokry, Glynn, Swick, Lacey, Patton, Police Sergeant John Manos, and police officers Haddad and Walsh.
 
 B. District Court Proceedings
 
 9
 Defendants moved for summary judgment on the ground that they reasonably believed that they had probable cause and, thus, were entitled to qualified immunity. In opposition, Mr. Evans argued that the defendants could not reasonably have had probable cause because they were unreasonable in not inquiring further into whether there was evidence that Mr. Evans actually struck Duffie. Specifically, Mr. Evans pointed to the fact that Angela White later testified at the preliminary hearing and in a subsequent deposition that she told the detectives only that Paul Evans was with the group of young men that beat James Duffie, not that Mr. Evans took part in the beating. Relying on Hughes v. Meyer, 880 F.2d 967 (7th Cir.1989), cert. denied, 110 S.Ct. 2172 (1990), the district court found "as a matter of law that defendants reasonably believed they had probable cause to arrest plaintiff." Memorandum Opinion and Order of April 10, 1991 (R. 70) at 4. This finding, the district court reasoned, precluded both the claim of arrest without probable cause and the claim of malicious prosecution.
 
 II
 ANALYSIS
 A. Applicable Standards
 
 10
 We review de novo a district court's grant of summary judgment. Doe v. Allied-Signal Inc., 925 F.2d 1007, 1008 (7th Cir.1991). Our task is to determine whether the record reveals that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); see Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). "A motion for summary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir.1990); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We " 'must view the record and all inference drawn from it in the light most favorable to the party opposing the motion.' " Lohorn, 913 F.2d at 331 (quoting Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir.1989)).
 
 
 11
 Police officers have probable cause to arrest a suspect "if, at the time the arrest was made, the facts and circumstances within the police officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person to believe that an offense was committed." Simkunas v. Tardi, 930 F.2d 1287, 1291 (7th Cir.1991); Hughes v. Meyer, 880 F.2d 967, 969 (7th Cir.1989), cert. denied, 110 S.Ct. 2172 (1990). "Probable cause requires more than bare suspicion, but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." Hughes, 880 F.2d at 969 (citing Brinegar v. United States, 338 U.S. 160, 175-76 (1949)). Probable cause is obviously an adequate defense to a claim of arrest without probable cause. Indeed, something less than probable cause is sufficient to entitle police officers to qualified immunity from such a claim. See Simkunas, 930 F.2d at 1291; Hughes, 880 F.2d at 970 ("an additional layer of protection against civil liability"). Probable cause is also an adequate defense to a malicious prosecution claim. Fernandez v. Perez, 937 F.2d 368, 371 (7th Cir.1991) (" '[T]he existence of probable cause to arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution.' " (quoting Scherz v. Waupaca County, 875 F.2d 578, 582 (7th Cir.1989)). Thus, this court finds dispositive the issue whether, at the time the arrest was made, the facts and circumstances within the defendants' knowledge and of which they had reasonably trustworthy information--when viewed in the light most favorable to the plaintiff--were sufficient to warrant a prudent person to believe that the plaintiff participated in the assault upon James Duffie.
 
 B. Discussion
 
 12
 Angela White testified at the pretrial hearing and the subsequent, June 15, 1989, deposition that she never told the investigating officers or detectives that Paul Evans participated in the attack on James Duffie. More than one of the defendants testified that Angela White told them that Paul Evans did participate in the assault. Mr. Evans now claims that this conflicting testimony creates a genuine issue of fact whether Angela White ever told the defendants that Mr. Evans participated in the attack on Duffie. In response, the defendants argue that this fact is indeed in dispute, but that it is immaterial because there was sufficient independent evidence to warrant their belief that Mr. Evans participated in the attack. Specifically, defendants rely upon the following evidence. First, Angela White did not dispute, either at the probable cause hearing or her subsequent deposition, that she told the investigating officers and detectives that she saw Mr. Evans among the group of people that had beaten Duffie. Second, White never testified that she told the investigating officers or detectives that Mr. Evans did not take part in the beating; when talking with the officers and detectives, White never distinguished Mr. Evans from the group of attackers. Third, defendants were aware that Mr. Evans' sister, Pricilla, had been raped and murdered in the early hours of June 18, 1986, and that Mr. Evans had discovered his sister's body later that morning. Fourth, later that same day, Mr. Evans himself spoke with detectives Swick, Mokry, Glynn, and Patton about his sister's disappearance and the discovery of her body. Mr. Evans told the detectives that he believed that James Duffie was responsible for his sister's death. Fifth, Andre Laughlin and LaDell Bryant both told Assistant State's Attorney Zelazo that they had met with Mr. Evans before the attack, that Mr. Evans told them what he overheard Duffie saying and that he saw scratches on Duffie's face, that Mr. Evans asked Bryant to bring Duffie to them so that the group could confront him, and that Mr. Evans was with them when they attacked Duffie. While neither Bryant nor Laughlin specifically stated that Mr. Evans took part in the beating, neither distinguished him as having not participated. None of these facts are disputed by Mr. Evans.
 
 
 13
 Given this undisputed evidence, the single disputed issue, whether Angela White told investigating officers that Mr. Evans took part in beating Duffie, is not material. At the time the defendants arrested Mr. Evans, there was sufficient independent evidence to warrant a prudent person to believe that Mr. Evans participated in the attack on James Duffie. Therefore, the defendants had probable cause to arrest Mr. Evans and they are not liable to Mr. Evans for either arrest without probable cause or malicious prosecution.[1] Mr. Evans' other arguments on appeal do not merit discussion.
 
 Conclusion
 
 14
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 This result does not contradict the state trial court's finding of no probable cause to proceed to trial, because "the probable cause standard to bindover for trial in Illinois preliminary hearings is more stringent than the probable cause to arrest standard in Illinois." Williams v. Kobel, 789 F.2d 463, 470 (7th Cir.1986)