4 F.3d 996
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Danny C. CROSS, Plaintiff-Appellant,
v.
CITY OF CHICAGO, a Municipal Corporation, and Robert
Faulkner, both as agent and individually,
Defendants-Appellees.
 No. 92-3552.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 17, 1993.*
Decided Sept. 2, 1993.
 
 Before MANION, and ROVNER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 
 ORDER
 
 1
 As a result of being arrested at Hyde Park Career Academy and temporarily held in a police wagon, Danny C. Cross sued the City of Chicago and the arresting officer, Robert J. Faulkner, under 42 U.S.C. Sec. 1983. He also brought claims under Illinois law for false arrest, false imprisonment, and battery. The district court granted summary judgment to the defendants. We conclude that the court correctly decided the defendants' motion for summary judgment. Thus, we affirm for the reasons stated in the attached memorandum opinion of the district court. Below, we address objections raised by Cross to the district court's decision.
 
 
 2
 Cross claims that the district court erroneously stated that Cross went behind the main counter in the administrative office. Cross is correct that, viewing the evidence in the light most favorable to him, see DeValk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326, 329 (7th Cir.1987), he did not actually go behind the counter, but rather was stopped in the passageway as he attempted to go behind the main counter. R. 58, Exh. 1, at 261, 271-72. However, this factual distinction is immaterial to this case because Officer Faulkner gave Cross notice that he must depart (from the area, if not the building) but Cross refused. Thus, it doesn't matter whether or not he was behind the main counter because Cross' actions violated the Illinois trespass statute.[1] Ill.Rev.Stat. ch. 38, para 21-3 (Smith-Hurd Supp.1991) (now codified at 720 ILCS para. 5/21-3 (1993)).
 
 
 3
 Next, Cross tries to undermine the court's conclusion that he was asked to leave the premises. First, he points to his deposition testimony where he specifically denied that he was asked to "leave." R. 58, Exh. 1, at 606. This argument is disingenuous because he admits that he was told "you got 15 seconds to get out of here." Id. Officer Faulkner's statement was equivalent to telling Cross to depart; at a minimum, Cross' apparent understanding of the statement (he did not ask for clarification, but rather what the consequences of disobeying would be) and his subsequent failure to depart were sufficient "to warrant a prudent person in believing that an offense [a violation of the Illinois trespass statute] ha[d] been committed." Hughes v. Meyer, 880 F.2d 967, 969 (7th Cir.1989), cert. denied, 459 U.S. 931 (1990). Second, Cross argues that summary judgment was inappropriate because Officer Faulkner stated during the incident that "you're supposed to have a pass anyway." Cross claims Officer Faulkner was informing him that he should get a pass, thus negating the earlier statement that he had 15 seconds to get out. Cross Br. 14-15. We reject this argument because we do not believe that a reasonable jury could interpret Officer Faulkner's statement in the manner Cross suggests. Thus, Officer Faulkner's statement created no genuine issue of fact as to whether Cross had permission to stay on the premises. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Third, Cross maintains that he had a right to be where he was because Officer Faulkner escorted him to the administrative office. Reply Br. 3-4. However, when they arrived at the administrative office, Hemphill was not there. Cross attempted to enter Hemphill's office without authorization, and Officer Faulkner told Cross to leave. Clearly, at that point, Cross no longer had a right to stay there.
 
 
 4
 Finally, Cross argues that he was not given a full 15 seconds in which to leave. This argument is frivolous. Officer Faulkner told Cross to leave, Cross didn't, nor from the ensuing conversation was there any indication that he soon would, and so he was arrested. Officer Faulkner had probable cause to believe that Cross was trespassing.
 
 
 5
 AFFIRMED.
 
 ATTACHMENT
 MEMORANDUM OPINION
 KOCORAS, District Judge:
 
 6
 This matter is before the Court on defendants' motion for summary judgment pursuant to Federal Rule 56. For the reasons set forth below, we grant the motion.
 
 BACKGROUND
 
 7
 Plaintiff, Danny Cross ("Cross"), has filed this section 1983 action against the City of Chicago and Officer Robert J. Faulkner. Cross alleges that on December 14, 1990 Officer Faulkner arrested and imprisoned him in violation of his Fourth Amendment rights and various state laws. Cross is a lawyer who resides in Detroit, Michigan. Officer Faulkner is a City of Chicago police officer who was assigned to Hyde Park Career Academy as part of the SAFE schools program school patrol unit. In response to Cross' suit, Officer Faulkner and the City of Chicago (collectively "the City") have now filed this motion for summary judgment.[1]
 
 
 8
 This dispute arises out of Cross' attempt to use a certain pay phone which was located in Hyde Park Career Academy ("the Academy"). The Academy is a Board of Education high school. Its principal is Dr. Weldon A. Beverly ("Beverly"), and its assistant principal is Malcolm Hemphill ("Hemphill"). Like other Chicago schools, the Academy has had difficulties with outsiders, gangs, and people entering the school to attack students, steal property, or threaten teachers. In response to such conduct, the Board of Education and Chicago Police Department instituted a program of assigning police officers directly to certain high schools.
 
 
 9
 Under this program, the assigned officer becomes part of the school's security team. As a general matter, these officers are responsible for paying particular attention to the presence of unauthorized persons in the school, challenging unauthorized persons in and around the school, informing unauthorized persons of the regulations governing the school area, asking them to leave, and taking proper police action against unauthorized persons in the school. On the date in question, Officer Faulkner was assigned to the Academy.
 
 
 10
 As a member of the Academy's security team, Officer Faulkner was responsible for enforcing the school's policies and procedures. One such policy was that "outsiders" were not allowed to use the pay telephones in the school's lobby. There had been problems in the past with gang members and other individuals using these phones and causing trouble. The school defined "outsiders" as anyone who was not a student or staff member.
 
 
 11
 Other relevant policies for purposes of this dispute relate to the school's administrative office. For instance, individuals (other than administrative personnel, students, and faculty working in the main office) were not permitted behind the main counter in the office unless they first reported to the receptionist and obtained permission to do so or were escorted behind the counter. The school also prohibited any outsider from entering an assistant principal's office if he was not in his office unless the individual obtained prior permission. Finally, the school also required all visitors (with one minor exception not applicable here) to obtain a pass from the administrative office in order to be authorized to be on school premises.
 
 
 12
 At approximately 2:00 p.m., on December 14, 1990, Cross entered the Academy's lobby for the purpose of using one of its pay telephones. Earlier that day, Officer Faulkner had received a tip from a confidential informant that individuals, possibly gang members, would be coming into the school with guns. While Cross entered the school, Officer Faulkner and other police officers were in the lobby discussing how best to deal with the tip. Additionally, a police wagon and at least one police car was parked in front of the school.
 
 
 13
 When Cross entered the lobby, he proceeded directly to a pay telephone. At that time, Officer Faulkner told Cross to hang up the phone because he could not use it. Cross did so and asked the officer why not. In response, Officer Faulkner simply stated that he could not use the phone. Cross then replied, "Well if I can't use the telephone, perhaps I should go in and speak with Mr. Hemphill because he's allowed me to use his telephone before." Officer Faulkner instructed Cross to follow him. At this time, Cross stated, "I have a troubled daughter here at the school." As the two individuals walked toward the administrative office, Officer Faulkner stated, "Mr. Hemphill better know you. What did you say your name was." Cross replied, "I wouldn't tell you that the man knew me if he didn't."
 
 
 14
 Soon after this discussion, Officer Faulkner entered the administrative office with Cross a step or so behind him. The two individuals then walked up to the opening next to the office's main counter. Present during this time was Beverly's secretary. Hemphill's office was the first office after one walked through the passageway next to the main counter. Officer Faulkner went behind the main counter and proceeded to look into Hemphill's office and turned and stated, "Oh, he's not in there." Cross then proceeded behind the main counter and replied, "I'll just go in here and wait for him." At no time did Cross ask for permission to come behind the counter or to enter Hemphill's office.
 
 
 15
 As Cross attempted to enter Hemphill's office, Officer Faulkner extended his forearm to block Cross' path stating, "Oh no, you won't." Officer Faulkner's forearm came into contact with Cross' chest below the rib cage. Cross then asked, "Why can't I go in there and wait for Mr. Hemphill." Officer Faulkner replied, "I run this. You have fifteen seconds to get out of here." Cross repeated, "I have fifteen seconds to get out" and then added, "Or what?" At this point, the two individuals were "eyeball to eyeball." Making his point clearer, Officer Faulkner explained, "Or you are going to be under arrest." Cross continued, "You know, as a lawyer, you can get into trouble for arresting people for no reason." The officer then repeated his warning, "You have five seconds to get out of here. You're suppose to have a pass anyway." Not willing to back down, Cross insisted, "Isn't this the office to which you must come to get a pass?" According to Cross, after this response, the parties were "eyeball to eyeball for just a couple of more seconds" and then Officer Faulkner pushed him against some mail boxes, turned him around, and stated that he was under arrest and "that's when he clamped those damn handcuffs on."
 
 
 16
 After Cross' arrest, Officer Faulkner conducted a protective pat down search. When Cross complained that the handcuffs were too tight, Officer Faulkner told him to "shut up." As the two individuals started out of the office, the officer asked certain individuals in the office if they had seen a particular person. When Cross asked why Officer Faulkner was doing this, he was again told to "shut up." As they were heading out of the building, Officer Faulkner stopped at the control room and inquired as to the location of the same individual as earlier. Cross was then walked out of the building, placed in a police wagon, and told that Hemphill would sign a complaint against him.
 
 
 17
 At some point during the initial confrontation and subsequent arrest, Beverly's secretary went to find Hemphill. When Hemphill learned of the incident, he quickly located Officer Faulkner and mentioned that Cross was a parent and that they should all talk in his office. Officer Faulkner then retrieved Cross from the police wagon, and the two proceeded to Hemphill's office. Within fifteen seconds after entering his office, Cross' handcuffs were removed. Discussions ensued, during which Beverly and Hemphill suggested that the matter should be resolved at the school level. Officer Faulkner agreed, no charges were filed, and the parties dispersed. Some time later, Cross filed this civil suit against Faulkner and the City of Chicago.
 
 
 18
 Cross' second amended complaint consists of four counts. Count I alleges that the City wrongfully seized, arrested, and imprisoned him without probable cause in violation of his Fourth Amendment rights. Count II alleges a state law claim for false arrest. Count III alleges a state law claim for false imprisonment, and Count IV states a claim for battery.
 
 
 19
 In response to this complaint, the City has now filed a motion for summary judgment as to each count. It argues that a judgment as a matter of law is appropriate as to Count I because there was probable cause to arrest Cross. In the alternative, the City argues that qualified immunity mandates a judgment in its favor. The City also relies on its probable cause argument as to Count II (false arrest) and III (false imprisonment) and argues that there is no evidence of any unreasonable contact without legal justification that would support the battery allegation in Count IV. Finally, the City argues, in the alternative, that summary judgment should be granted as to all the state law counts because there is no evidence that Faulkner acted in willful or wanton manner. Cross takes issue with each of these contentions. We will discuss the parties' arguments below. But first, we must address the appropriate summary judgment standard.
 
 LEGAL STANDARD
 
 20
 Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other materials show "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue exists if "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A "material fact" exists only if there is a factual dispute that is outcome determinative under governing law. Id. at 248; Howland v. Kilquist, 833 F.2d 639, 642 (7th Cir.1987). The party seeking summary judgment has the initial burden of showing that no such issue of material fact exists.
 
 
 21
 When a properly supported motion for summary judgment has been made, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial." Id. Like the movant, the nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather he must support his contentions with proper documentary evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Howland, 833 F.2d at 642. Moreover, the opposing party is entitled to the benefit of all favorable inferences that can reasonably be drawn from the underlying facts but not every conceivable inference. De Valk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326, 329 (7th Cir.1987). It is light of this standard that we examine the City's motion.
 
 DISCUSSION
 A. Count I-Fourth Amendment Violation
 
 22
 The City raises two arguments in support of it motion for summary judgment as to Count I. Count I is brought pursuant 42 U.S.C. section 1983 and alleges that Officer Faulkner violated Cross' Fourth Amendment rights by unlawfully seizing and arresting him. The City's primary argument in support of its summary judgment motion is that probable cause existed to arrest Cross for criminal trespass, and therefore no constitutional violation arose. In the alternative, the City maintains that even if no probable cause existed qualified immunity bars Cross' section 1983 claim. Cross disagrees with each contention. After considering the parties' arguments, we grant summary judgment as to Count I.
 
 
 23
 We first address the probable cause issue. It is well established that the existence of probable cause for an arrest is an absolute bar to a section 1983 claim for unlawful arrest and false imprisonment. Mark v. Furay, 769 F.2d 1266, 1268-69 (7th Cir.1985); see also Schertz v. Waupaca County, 875 F.2d 578, 582 (7th Cir.1989) (acknowledging that probable cause is a bar to section 1983 claim regardless of the officer's motives toward the plaintiff). Probable cause for an arrest exists if, at the moment the arrest was made, the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed. Hughes v. Meyer, 880 F.2d 967, 969 (7th Cir.1989), cert. denied, 459 U.S. 931 (1990). Probable cause is to be determined in a " 'practical, nontechnical' " manner. Id. (citation omitted). Probable cause requires more than bare suspicion but need not be based on evidence sufficient to support a conviction nor even a showing that the officer's belief is more likely true than false. Id.; Chathas v. Smith, 884 F.2d 980, 987 (7th Cir.1989), cert. denied, 493 U.S. 1095 (1990). Indeed, the rule of probable cause permits mistakes reasonably made. Hughes, 880 F.2d at 970. Finally, we note that where there is "no room for a difference of opinion," a court may determine whether probable cause existed as a matter of law and grant a defendant's motion for summary judgment. Schertz, 875 F.2d at 582; Chathas, 884 F.2d at 987.
 
 
 24
 The critical issue that we are face with then is whether at the time Officer Faulkner arrested Cross in the administrative office, were the facts and circumstances within his knowledge and of which he had reasonably trustworthy information sufficient to warrant a prudent person to believe that Cross was in violation of Illinois' criminal trespass law.[2] See Ill.Ann.Stat. ch. 38, p 21-3 (Smith-Hurd Supp.1991). An individual commits the offense of criminal trespass if: (1) he is upon the land or in a building other than a residence of another, (2) he is directed to leave, (3) by an owner or occupant; and (4) does not leave. Id.; see also People v. Mortenson, 178 Ill.App.3d 871, 533 N.E.2d 1134, 1136 (2d Dist.1989). Criminal trespass is a Class C misdemeanor in Illinois Ill.Ann.Stat. ch. 38, p 21-3.
 
 
 25
 Viewing the facts in the light most favorable to Cross, we conclude that Officer Faulkner had probable cause to arrest Cross for criminal trespass. All of the elements of Illinois' criminal trespass statute are satisfied here. It is undisputed that Cross was in the school. Additionally, Officer Faulkner directed Cross to leave twice. The officer expressly warned Cross that he had "fifteen seconds to get out of here." When Cross persisted, he was directed to leave a second time by Officer Faulkner. Moreover, Officer Faulkner's directive that Cross vacate the premises was entirely appropriate. It is clear that the officer had the authority to remove unauthorized individuals from the school's premises and to determine whether an individual was unauthorized in the first instance. Under the Academy's policies, Cross was not entitled to go behind the main counter of the administrative office without prior permission or an escort. Nor was Cross entitled to enter Hemphill's office without prior permission. When Cross went behind the main counter and then expressed an intent to wait in Hemphill's office and proceeded toward it, he violated both of these policies.[3] At this point, Cross was an unauthorized visitor on the premises, and Officer Faulkner, as an agent of the owner or occupier of the land, had the authority to remove him from the premises if Cross refused to leave of his own volition. See People v. Gudgel, 183 Ill.App.3d 881, 540 N.E.2d 391, 393. (4th Dist.1989) (holding that police officers can properly serve notice to leave the premises under Illinois' criminal trespass law and that it is prudent to delegate this function to the police); People v. Thompson, 56 Ill.App.3d 557, 372 N.E.2d 117, 118-19 (3d Dist.1978) (holding that police officer could properly arrest individuals on school premises after directing that they vacate the premises pursuant to school superintendent's demand). Finally, it is clear that Cross rejected both directives by Officer Faulkner to leave. After doing so, it was reasonable for Officer Faulkner to conclude that Cross was in fact trespassing, and therefore there was probable cause to arrest him. Accordingly, summary judgment is proper as to Count I.
 
 
 26
 Cross raises a myriad of arguments as to why probable cause is lacking. Many of these contentions, however, are misconceived and irrelevant to the issue at hand. Accordingly, we only address Cross' most meritorious arguments. One such argument is that Officer Faulkner's notice that Cross "get out of here" was too general to serve as proper notice under Illinois' statute. See Gudgel, 540 N.E.2d at 393. Specifically, Cross maintains that the officer may have only meant to leave the area behind the administrative counter as opposed to the premises. We reject this argument. In a civil case, as opposed to a criminal trial, the defendant officer need only establish that he "had reasonable grounds to believe that the plaintiff received the notice, rather than that the plaintiff believed such notice had been given." Dutton v. Roo-Mac, Inc., 100 Ill.App.3d 116, 426 N.E.2d 604, 608 (2d Dist.1981). Here, Cross' actions subsequent to the officer's notice would have led a reasonable person to conclude that he understood the directive. Cross did not question the meaning of Officer Faulkner's statement in any way. Moreover, Cross' reliance on People v. Mims, 8 Ill.App.3d 32, 288 N.E.2d 891 (1st Dist.1972), is misplaced. In Mims, the officer advised the individual to leave and then in the same breath stated that he was under arrest. Mims, 288 N.E.2d at 893. In contrast, Officer Faulkner provided Cross with ample time to leave or, at the very least, demonstrate an intent to abide by the officer's directive. Mims is therefore distinguishable and of no help to Cross. Accordingly, we reject his argument that Officer Faulkner's notice to vacate the premises was inoperative under Illinois' criminal trespass statute.
 
 
 27
 We also reject Cross' argument that "trespass to land had [nothing] to do with" his arrest. It is well-settled that the issue is not Officer Faulkner's actual motives or lack of good faith in arresting Cross but rather whether a reasonable officer could have believed that an offense of criminal trespass had been committed. Schertz, 875 F.2d at 582. As demonstrated above, this is the case. Therefore, we reject Cross' argument to the contrary.
 
 
 28
 Finally, Cross also argues that probable cause was lacking for the arrest because Officer Faulkner never made an inquiry as to whether Cross had a legitimate reason for being present at the Academy. We reject this argument as well. Once an officer has established cause on every element of a crime, he "need not continue investigating to check out leads or test the suspect's claim of innocence." Be Vier v. Hucal, 806 F.2d 123, 128 (7th Cir.1986); Schertz v. Waupaca County, 683 F.Supp. 1551, 1564 (E.D.Wis.1988), aff'd, 875 F.2d 578 (7th 1989); see also Gramenos v. Jewel Cos., 797 F.2d 432, 442 (7th Cir.1986) (concluding that "the police need not automatically interview available witnesses, on pain of the risk that a jury will require them to pay damages"), cert. denied, 481 U.S. 1028 (1987). The elements of the crime of criminal trespass were established after Cross refused to vacate the premises. After this refusal, Officer Faulkner was relieved of any purported obligation to conduct an investigation as to the propriety of Cross' business at the Academy. Moreover, contrary to Cross' suggestion, a parent (even one who is a lawyer) who has a legitimate reason for being on school grounds has no right to violate school policies without reprisal. Accordingly, we reject Cross' suggestion to the contrary.
 
 
 29
 Summary judgment is also proper as to Count I because Officer Faulkner is entitled to qualified immunity. "[E]ven in the absence of probable cause for an arrest, qualified immunity provides officers with an additional layer of protection against civil liability." Hughes, 880 F.2d at 970. Police officers are generally protected by qualified immunity "if their allegedly unlawful actions meet the test of objective legal reasonableness assessed in the light of the legal rules that were clearly established at the time the actions were taken." Id. Qualified immunity is designed to "shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law.' " Id. at 971 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Whether an officer is entitled to qualified immunity is a question of law for the court to decide. Alvarado v. Picur, 859 F.2d 448, 450 (7th Cir.1988).
 
 
 30
 Viewing all the evidence in the light most favorable to Cross, we conclude that a reasonable police officer could have believed that he had probable cause to arrest Cross on December 14, 1990. Officer Faulkner was aware of the Academy's rules regarding the administrative office and was under an obligation to enforce them. According to these policies, Cross was not allowed behind the main counter without first reporting to the receptionist and obtaining permission to do so or by being escorted behind the counter. Moreover, the officer was also aware of the school's policy prohibiting any outsider from entering an empty assistant principal's office without prior permission. Cross violated both of these policies. Nevertheless, when directed to leave, he refused to do so. Under these circumstances, we conclude that Officer Faulkner's arrest meets the qualified immunity's test of objective legal reasonableness. His actions can in no way be labeled as "plainly incompetent" or in "knowing violation" of the law. Therefore, summary judgment as to Count I is also proper on qualified immunity grounds.
 
 B. Count II, III, & IV--State Law Claims
 
 31
 The City also seeks summary judgment as to Cross' state law claims. Count II alleges false arrest, while Count III alleges false imprisonment. Count IV is a claim for battery. The City argues that summary judgment is proper as to all of these claims because probable cause existed for the arrest, and there was no unreasonable touching without legal justification. In the alternative, the City argues that there is no evidence that Officer Faulkner acted in a willful or wanton manner. Again, because the City's position is correct, we grant summary judgment as to Count II, III, and IV.
 
 
 32
 We first address Cross' Count II (false arrest) and Count III (false imprisonment) together. Under Illinois law, false arrest consists of "a restraint or an arrest caused by another without reasonable grounds to believe a crime is being committed." Schroeder v. Lufthansa German Airlines, 875 F.2d 613, 621 (7th Cir.1989). Similarly, false imprisonment is "an unreasonable restraining of an individual's liberty, against his will, caused or procured by the defendant." Meerbrey v. Marshall Field & Co., 139 Ill.2d 455, 564 N.E.2d 1222, 1231 (1990). As with Cross' section 1983 claim, probable cause for his arrest bars these state law claims. Mosley v. LaMastus, 741 F.Supp. 724, 726 (N.D.Ill.1990). Probable cause exists under Illinois law if the facts and circumstances known to the officer at the time are sufficient to warrant a reasonable person in believing that a crime has been committed and that the person arrested has committed it. People v. Wetherbe, 122 Ill.App.3d 654, 462 N.E.2d 1, 4 (2d. Dist.1984). As demonstrated above, Officer Faulkner's arrest of Cross satisfies this standard. Therefore, probable cause existed for the arrest, and we grant summary judgment as to Count II and III.
 
 
 33
 Summary judgment is also appropriate as to Count IV, the battery count. A person commits a battery if he intentionally or knowingly "without legal justification" causes bodily harm to an individual ... or makes physical contact of an insulting or provoking nature. People v. Villareal, 114 Ill.App.3d 389, 449 N.E.2d 198, 203 (2d Dist.1983). Under the Academy's policies, Faulkner had the legal right to prevent Cross from entering Hemphill's office without permission. Moreover, the means used--sticking out his forearm to block Cross' path--was reasonable under the circumstances. Therefore, we grant summary judgment as to Count IV.
 
 
 34
 Cross argues that Officer Faulkner had no reason to believe that Cross would disobey a request to stop, and therefore this is the means that he should have employed. We need not decide the ideal means that the officer could have employed to stop Cross' forward progress into Hemphill's office. Suffice it to say that the means employed by him were reasonable. This is all the law requires. Cross' remaining arguments are merely conclusory allegations with no basis. Therefore, we reject them.
 
 
 35
 Summary judgment is also appropriate as to each of the state law claims because there is no evidence that Officer Faulkner's conduct was wilful and wanton. Under Illinois law, Cross' state law claims can only survive if Officer Faulkner's conduct was wilful and wanton. Ill.Ann.Stat. ch. 85, Sec. 2-202 (1987). Illinois defines wilful and wanton action as one "which shows an actual or deliberate intention to cause harm or which ... shows an utter indifference to ... the safety of others." Ill.Ann.Stat. ch. 85, Sec. 1-210.
 
 
 36
 We conclude that Cross has failed to proffer sufficient facts to create a material issue of fact regarding the willful and wanton issue. Cross' primary argument is that Officer Faulkner published falsehoods about Cross. Specifically, he contends that while in Hemphill's office the officer accused Cross of being drunk. This evidence, even when viewed in the light most favorable to Cross, is insufficient to give rise to a material issue of fact regarding the willful and wanton issue. Rather, given the undisputed evidence, it is clear that the officer acted in a reasonable manner. He directed Cross to leave only after Cross violated school policy. Moreover, he gave Cross two opportunities to leave the building. Additionally, there is no evidence of excessive force by Officer Faulkner. Finally, he agreed to settle the matter at the school level when asked to do so despite his own belief that the arrest was proper. In viewing these facts, we conclude that Cross has failed to present sufficient evidence that Officer Faulkner's conduct was willful and wanton. As such, summary judgment is proper as to the state law counts on this alternative basis as well.[4]
 
 CONCLUSION
 
 37
 For the foregoing reasons, we grant defendants' motion for summary judgment.
 
 Dated: September 16, 1992
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." Fed.R.App.P. 34(a); Circuit Rule 34(f). Appellant filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 Any suggestion by Cross that Officer Faulkner was acting outside the scope of his agency relationship with the Chicago School Board is incorrect. Cross admits saying, "I'll just go in there [Mr. Hemphill's office] and wait for him." Cross Br. 6. As it was against school policy for outsiders to wait in private offices, see R. 58, Exh. IV, at 59; Exh. VI, at 70, Officer Faulkner, whose responsibilities included enforcing school rules, R. 58, Exh. III, at 2; R. 58, paras. 11-14, was justified in ordering Cross to leave
 
 
 [1]
 For purposes of this summary judgment only, the City has agreed to accept Cross' description of the events that took place on December 14, 1990 as represented in his and other parties' depositions and as properly articulated in Cross' 12(n) statement
 
 
 [2]
 Illinois' criminal trespass statute provides, in pertinent part:
 Criminal trespass to real property. (a) Whoever ... remains upon the land or in a building, other than a residence, of another after receiving notice from the owner or occupant to depart, commits a Class C misdemeanor.
 Ill.Ann.Stat. ch. 38, p 21-3 (Smith-Hurd Supp.1991).
 
 
 [3]
 In his response brief, Cross attempts to argue that he merely followed Officer Faulkner behind the main counter and therefore did violate any school policy. We reject this contention as unfounded. Cross' own deposition testimony clearly demonstrates that Officer Faulkner was the only party to initially go behind the main counter. The deposition testimony further states that after the officer informed Cross that Hemphill was not in his office, Cross then proceeded behind the counter and toward the office without any permission to do so
 
 
 [4]
 Cross' state law claims were against both Officer Faulkner and the City of Chicago. Since Officer Faulkner is not liable on any of these counts, neither is the City of Chicago. See Ill.Ann.Stat. ch. 85, Sec. 2-109. Accordingly, summary judgment is appropriate as to both parties