In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2904

CHRISTOPHER WILSON, et al.,

*Plaintiffs-Appellant*s,

*v.*

KEITH PRICE, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CV 7199—**William J. Hibbler**, *Judge*.

ARGUED FEBRUARY 10, 2010—DECIDED OCTOBER 4, 2010

Before RIPPLE, MANION, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Keith Price, a Harvey, Illinois alderman who had received several complaints about cars parked illegally in front of Midnight Auto Express, decided to take matters into his own hands. He drove to the repair shop, demanded that the cars be moved, and after an employee refused his orders, savagely beat the employee until he was unconscious. The question before the court is whether this conduct gives rise to

a federal claim under 42 U.S.C. § 1983. Although the alderman's actions were reprehensible, we find that they were not made under color of state law and, therefore, cannot serve as the basis for § 1983 liability. As a result, we affirm the district court's dismissal of the plaintiffs' complaint.

## I.  BACKGROUND

Price was at all times relevant to this case an alderman for the Sixth Ward of the City of Harvey ("the City"). On May 2, 2008, Price received a number of phone calls from his constituents complaining about cars parked illegally on the parkway in front of Midnight Auto Express ("Midnight Auto"), a car repair shop located within the Sixth Ward. That evening, Price attempted to call the City about removing the cars, but did not get a response. Price then decided to go to Midnight Auto himself. When he arrived, he spoke with Christopher Wilson, a mechanic at the shop, and demanded that Wilson move the cars. Wilson refused. Price then demanded that Wilson summon the owner of Midnight Auto. Wilson told Price to find the owner himself and then turned to walk away. Furious, Price punched Wilson in the head several times, leaving Wilson unconscious and with a fractured jaw.

Wilson and his wife, Camilia Booker, sued Price and the City of Harvey for damages. In their first amended complaint, the plaintiffs asserted claims under 42 U.S.C. §§ 1983 and 1985 against Price (Count I) and the City (Count II), as well as state law claims for loss of consortium

(Count III) and battery (Count IV). They also raised an indemnification claim against the City pursuant to 745 Ill. Comp. Stat. § 10/9-102 (Count V). Price and the City moved to dismiss all counts pursuant to Rule 12(b)(6), arguing that Wilson failed to state a claim against them under § 1983 and that the court should not exercise supplemental jurisdiction over the remaining state law claims. The district court found that Wilson had pleaded facts demonstrating that Price had not acted under color of state law and accordingly dismissed the § 1983 claim with prejudice. The district court also declined to exercise jurisdiction over the state law claims and dismissed them without prejudice. The plaintiffs appeal the dismissal.

## II. ANALYSIS

We review de novo a district court's decision to grant a motion to dismiss under Rule 12(b)(6). *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). "We construe the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor."[1] *Id.* (citation omitted). The complaint's

---

[1] The plaintiffs make repeated reference to the criminal case against Price, in which an Illinois state court found Price guilty of battery after a bench trial. *See People v. Price,* No. 08 MC6 011003-01. The plaintiffs attempt to draw our attention to excerpts from the trial transcript, but the plaintiffs never

(continued...)

"allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (citation omitted). Dismissal is proper if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Kennedy v. Nat'l Juvenile Det. Ass'n,* 187 F.3d 690, 694 (7th Cir. 1999).

The central question on appeal is whether the plaintiffs have alleged facts sufficient to establish that Price was acting under color of state law during the May 2, 2008 altercation outside Midnight Auto. To be liable under 42 U.S.C. § 1983, Price must have acted "under color of state law" to deprive Wilson of some federally guaranteed right. *Pickrel v. City of Springfield, Ill.,* 45 F.3d 1115, 1118 (7th Cir. 1989). "Not every action by a state official or employee is to be deemed as occurring 'under color' of state law," *Hughes v. Meyer,* 880 F.2d 967, 971 (7th Cir. 1995); rather, action is taken under color of state law "when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," *Honaker v. Smith,* 256 F.3d 477, 484-85 (7th Cir. 2001). The mere assertion that one is a state officer

---

(...continued)

referenced the excerpts in the complaint, nor did they attach them to the complaint. Because the excerpts are outside the pleading, they are stricken from the appeal. *McCready,* 453 F.3d at 891. Therefore, we only consider those allegations made within the four corners of the complaint.

does not necessarily mean that one acts under color of state law. *Askew v. Bloemker*, 548 F.2d 673, 677 (7th Cir. 1976). A state officer's conduct does not constitute acting under color of state law unless it is "related in some way to the performance of the duties of the state office." *Honaker*, 256 F.3d at 485.

The plaintiffs contend that Price was acting under color of state law when he attacked Wilson because Price was "performing his civic duties as 6[th] Ward Alderman for the City" when he went to Midnight Auto in an effort to have the illegally parked cars moved. Yet, the plaintiffs fail to articulate which of Price's actions at Midnight Auto relate to his aldermanic duties. Under the Illinois Municipal Code, aldermen are elected members of the municipality's city council, and in that capacity serve a "purely legislative" function. *See* 65 Ill. Comp. Stat. § 5/6-4-6 ("The powers of the council shall be purely legislative, except as may be otherwise specifically provided by any other act or by any article of this Code."); *see also United States v. Brewster*, 408 U.S. 501, 512 (1972) ("A legislative act has consistently been defined as an act generally done in Congress in relation to the business before it."). No other statutory provision expands the powers of an alderman. *See generally* 65 Ill. Comp. Stat. §§ 5/6-4-2 to 6-4-8.

Even drawing all reasonable inferences in Wilson's favor, the complaint's allegations do not demonstrate that any aspect of Price's conduct on May 2, 2008 related to his legislative duties, which include both the statutorily authorized enactment of legislation and the

activities "related in some way" to the performance of the legislative function. *Honaker,* 256 F.3d at 485. At oral argument, defense counsel conceded that an alderman may be acting under color of state law when he performs actions within the powers granted to him or that he practices under common law, including legislative investigation. Under that framework, we find that Price was well within his aldermanic authority when he initially called the City to request that another department move the cars about which Price's constituents had complained. Further, because we understand his role as legislator to entitle him to perform the secondary activities necessary for the fulfillment of that function, we also find that Price would have been entitled to go to Midnight Auto for the purpose of investigation (i.e., getting the vehicle tag numbers, inquiring about why the cars are parked there), and perhaps this was Price's initial intent. But, even assuming that he was at Midnight Auto in a capacity legitimately related to his role as legislator, it is indisputable that Price crossed that line and entered the realm of law enforcement—which is wholly unrelated to the duties of a legislator—the moment he demanded that Wilson move the cars. The plaintiffs concede as much in their brief, stating that Price "was stepping in the shoes for the Harvey Police [when he] proceeded to attempt to enforce certain City of Harvey parking requirements." Price's presence at Midnight Auto may have been related to his aldermanic duties in that he was responding to constituent complaints, but even Price does not dispute that his authority to act was limited to enacting legislation in

response to those complaints. It is clear that taking such executive action was outside the scope of Price's aldermanic grant of authority.

That Price's conduct was not connected to his legislative duties or related activities distinguishes this case from cases like *Cole v. City of Chicago,* No. 06 C 4704, 2008 WL 68687 (N.D. Ill. Jan. 4, 2008), on which the plaintiffs heavily rely. In *Cole,* the plaintiff brought a § 1983 claim against the city and several paramedics in part based on the allegation that one paramedic had physically assaulted the plaintiff while removing him from an ambulance. The court explained that "[m]oving patients in and out of ambulances is something that paramedics do *in the course of their regular duties,*" which the court found was "enough to support Cole's argument that Ward was acting under color of state law during Cole's removal from the ambulance, as an allegedly improper use of force occurred while Ward was performing his official duties." *Id.* at *4 (emphasis added). Unlike the paramedic's duty to remove patients from ambulances, however, Price's demand that Wilson remove the cars illegally parked in front of Midnight Auto (and, obviously, his use of force against Wilson when Wilson refused) does not constitute part of an alderman's regular duties whether those duties are legislative or otherwise necessary for legislation. As such, it is not a basis on which we can find Price to be acting under color of state law.

Because Price had no enforcement authority, none of the actions taken to compel Wilson to move the illegally parked cars were effectuated under color of state law,

as one cannot misuse power one does not possess. *Gibson v. City of Chicago,* 910 F.2d 1510, 1518 (7th Cir. 1990). When officials possess no authority to act, we have found that their conduct is outside the ambit of § 1983. *See id.* ("[W]e have found no authority for expanding this concept of [acting under color or pretense of law] to encompass the actions of an official who possessed *absolutely no authority* to act but nonetheless assumed the position of an imposter in pretending that he did.") (emphasis in original). *See also Vanderlinde v. Brochman,* 792 F. Supp. 52, 53-54 (N.D. Ill. 1992) ("Just because [defendants, two firefighters who physically assaulted plaintiffs] may have proclaimed themselves as 'the law in Oak Lawn' does not of course make it so. . . . And the fact that [defendants] had and exhibited badges evidencing their status as firefighters does not somehow convert them into the equivalent of off-duty law enforcement officers within the scope of the Section 1983 cases that find the 'under color of law' requirement satisfied in some factual contexts.").

In *Hughes v. Meyer,* 880 F.2d at 969, a game warden of the Wisconsin Department of Natural Resources provided local sheriffs with information regarding the plaintiffs' alleged attempt to falsely imprison him, thereby causing the plaintiffs' arrest. The plaintiffs brought a § 1983 action against the warden and the sheriffs, alleging that the defendants violated their rights under the Fourth Amendment by arresting them without probable cause. We found that the game warden's provision of information about the alleged criminal act was not under color of state law. *Id.* at 972. While the warden

had the authority to enforce Wisconsin's gaming laws, "his authority presumably does not extend to the general enforcement of state law; he is a game warden, charged only with enforcing the state's game laws, not the full panoply of criminal laws such as those against false imprisonment." *Id.* Like the game warden in *Hughes,* Price's actions were not done by virtue of the authority granted to him by his employment. Price had no authority to undertake any sort of enforcement action in response to the complaints he received about the illegally parked cars in front of Midnight Auto, and the plaintiffs have failed to allege facts demonstrating that Price's conduct was related to the performance of his duties as an alderman.

The cases in which we have found that an official's conduct may constitute state action even when the conduct exceeds the official's grant of authority are of no assistance to the plaintiffs here. In *Lopez v. Vanderwater,* 620 F.2d 1229, 1236 (7th Cir. 1980), we held that "[a]ction taken by a state official who is cloaked with official power and who purports to be acting under color of official right is state action and is taken under color of state law whether or not the action is in fact in excess of the authority actually delegated to the official under state law." There, we determined that the defendant judge's actions in illegally prosecuting the plaintiff could form the basis of the plaintiff's § 1983 claim despite their non-judicial nature because he "was able to take his prosecutorial acts because he was cloaked with the office of judge. His use of that office to prosecute Lopez was action under color of state law." *Id.* at 1237.

Unlike the plaintiff in *Lopez*, however, the plaintiffs here have made no substantive contention that Price attempted to cloak himself in his authority as alderman during the confrontation with Wilson. The complaint is devoid of any allegation that Price bore any indicia of his position as an alderman or that he invoked his aldermanic office in any way, even to identify himself as an alderman at any point during the confrontation. Further, there are no other allegations indicating that Price's conduct was contemplated within the scope of his aldermanic authority, and the failure to identify oneself as a state official is inconsistent with being cloaked in one's official authority. *Cf. Pickrel*, 45 F.3d at 1118 (finding that off-duty police officer who physically attacked plaintiff at restaurant could have been acting under color of state law because he was wearing his police uniform, displaying his badge, wearing his gun, and his marked squad car was outside the restaurant).

Price's confrontation with Wilson amounts to no more than a dispute between private citizens. A private citizen may not be liable under § 1983 unless the citizen becomes a public officer *pro tem* or conspires with a public employee to deprive a person of his constitutional rights. *Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002). The plaintiffs have made no allegation that Price's conduct fits into either category, and without so alleging, the complaint fails to demonstrate that Price was acting under color of state law. *See Hughes*, 880 F.2d at 972 (concluding that game warden did not act under color of state law because his conduct was "functionally equivalent to that of any private citizen"). The plain-

tiffs "may not avoid dismissal . . . simply by attaching bare legal conclusions to narrated facts which fail to outline the basis of their claims." *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991).

As we conclude that Price did not act under color of state law, we affirm the district court's dismissal of Counts I[2] and II[3] of the complaint. Because the federal claims were properly dismissed, it was also appropriate

---

[2] To the extent that Count I purports to raise a claim under 42 U.S.C. § 1985, it also fails to state a claim. The only conceivably applicable subsection is § 1985(3), which requires that a plaintiff allege, among other things, that the defendants intentionally conspired to deprive him of equal protection of the laws. The complaint makes no such allegation, but rather consists mainly of conclusory allegations, which is insufficient to meet the pleading standards of Rule 8 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

[3] To the extent that Count II asserts a municipal liability claim against the City, it also fails. While a municipality can be found liable under § 1983 when the municipality's policy or custom inflicts the injury, *Monell v. Dep't of Social Svcs.*, 436 U.S. 658, 694 (1978), the plaintiffs have not alleged any such policy or custom. Instead, they argue that the City "failed to train" Price. This, however, is not a valid basis for the City's liability since it does not have the ability to train, supervise, or otherwise discipline Price, who is an elected official. *See Ryan v. County of DuPage*, 45 F.3d 1090, 1092 (7th Cir. 1995) ("It is plain that the county was properly dismissed; Illinois sheriffs are independently elected officials not subject to the control of the county.") (citation omitted).

for the district court to dismiss the pendent state law claims in the absence of any independent basis for federal jurisdiction. *See Williams v. Aztar Ind. Gaming Co.,* 351 F.3d 294, 300 (7th Cir. 2003).


### III. CONCLUSION

The district court's dismissal of the plaintiffs' complaint is AFFIRMED.