**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 18, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

THE MEADOWS AT BUENA VISTA,
INC., a Colorado corporation;
LONESOME PINE HOLDINGS, LLC,
a Colorado limited liability company,

      Plaintiffs - Appellants,

      v.

ARKANSAS VALLEY PUBLISHING
COMPANY,

      Defendant - Appellee,

and

TOWN OF BUENA VISTA,
COLORADO; CARA RUSSELL,

      Defendants.

No. 12-1084
(D. Colorado)
(D.C. No. 1:10-CV-02871-MSK-KMT)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

---

    [*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The Meadows at Buena Vista, Inc. (Meadows) unsuccessfully attempted to obtain approval from the Town of Buena Vista (the Town) for a proposed municipal annexation of a tract that Meadows planned to develop. Meadows sued the Town and its mayor, Cara Russell, on various causes of action, including tortious and unconstitutional obstruction of its development plans, and it sued the publisher of the local newspaper, Arkansas Valley Publishing Company (the Publisher), for aiding and abetting the mayor's constitutional violations and conspiring with the mayor to commit those violations. It settled with the Town and mayor, but the district court, after dismissing Meadows' first amended complaint, denied Meadows' motion to file a proposed Third Amended Complaint because it did not state a cause of action against the Publisher, and dismissed the Publisher with prejudice. Meadows appeals the dismissal, arguing that the proposed Third Amended Complaint stated a claim because it properly alleged an agreement between the Publisher and the mayor. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. We agree with the district court's ruling, not adequately challenged by Meadows on appeal, that the proposed complaint failed to allege constitutional violations by the mayor.

I.   BACKGROUND

A.   Facts

In 2005 Meadows began discussions with the Town concerning the development and annexation of a 274-acre tract of land west of the Town.

-2-

Petitions for annexation are presented to the Town trustees. At the time, the six trustees included Russell.

The Town code provides that, absent waiver by the trustees, an annexation applicant must either dedicate water rights to the Town as a condition of annexation or, at the Town's option, make cash payments to the town for the purchase of water rights. The Town initially insisted that Meadows dedicate the water rights it had to the land to be annexed. In late 2005 and early 2006, however, the Town expressed its willingness to agree to a plan involving cash payments instead. But after a March 28, 2006, Town meeting, the Town again insisted that any annexation be conditioned on the dedication of water rights. About this time, Russell was elevated from trustee to mayor.

In late 2006 two trustees resigned, and new trustees were elected. Shortly after they took office, the Town and Meadows entered into a pre-annexation agreement permitting Meadows to pay the town cash in lieu of dedicating water rights. The trustees unanimously approved an annexation and development agreement on March 25, 2008. Russell did not vote because the mayor is not entitled to vote on annexations. Four citizens circulated a petition for a referendum to overturn the trustees' approval of the plan. *See* Colo. Rev. Stat. § 31-12-107(2)(a) (2010) (authorizing petitions for referenda). In response, Meadows voluntarily withdrew its agreements and requested the trustees to conduct a public hearing at which the petitioners could express their concerns.

When no citizens attended the hearing, the trustees again approved the project on September 5, 2008, this time with one dissenting vote. The Town and Meadows agreed to preempt another citizen-filed referendum petition by placing the matter on the November 4, 2008, ballot. On October 28 the trustees adopted a resolution endorsing the ballot measure. Russell neither voted nor expressed an opinion at either the September 5 or October 28 meeting.

Sometime before the November 4 election, Russell submitted an opinion column to the Publisher to run in the local newspaper, the Chaffee County Times. The column encouraged citizens to vote against approval of Meadows' project, suggesting that the risks to the community from approving the development outweighed the potential benefits. The Publisher printed the column on October 30. Voters defeated approval of Meadows' project by a margin of 23 votes out of nearly 1,600 cast.

Meadows asserts that the Publisher opposed approval of the project and that it cooperated with Russell to ensure its defeat. It alleges that the Publisher failed to report on (1) alleged conflicts of interest resulting from Russell's connection to Dean Hiatt, a competing developer, and (2) the Town's favoritism toward Hiatt's development company. Moreover, Meadows alleges that the Publisher ran Russell's column on the Sunday immediately preceding the Tuesday election, instead of on the previous Sunday, to deprive Meadows of the opportunity to respond.

## B.    Procedural History

On November 3, 2010, Meadows filed a complaint in Colorado state court alleging multiple claims against the Town and Russell.  It also alleged a claim against the Publisher for aiding and abetting Russell's "overall illegal, tortious and unconstitutional conduct."  Aplt. App. at 42 (Compl. at 17, *Meadows at Buena Vista, Inc. v. Town of Buena Vista, et al.*, No. 2010 CV 149 (Colo. Cnty. Ct. Nov. 3, 2010)).  On November 12 Meadows amended its complaint to add as a plaintiff Lonesome Pine Holdings, LLC, which owned the land for the proposed development.  (Lonesome Pine's claims were identical to Meadows', so we need not mention it further.)  On November 23 the defendants removed the suit to the United States District Court for the District of Colorado.

A week after removal, the Publisher moved to dismiss the claim against it under Fed. R. Civ. P. 12(b)(6) for failure to state a cause of action.  Meadows filed a response in opposition, followed by successive motions to amend the complaint.  Its proposed First Amended Complaint (which would actually have been a second amended complaint), submitted for approval on February 7, 2012, expanded the claim against the Publisher to five claims.  Four claims were unequivocally solely for civil-rights violations.  Count 12 is entitled "Conspiracy Against the [Publisher] to Violate Plaintiffs' Civil Rights."  *Id.* at 155.  Count 13 is entitled "Conspiracy Against the [Publisher] to Violate Plaintiffs' Civil Rights with Actual Malice."  *Id.* at 160.  Count 14 is entitled "Aiding and Abetting

-5-

Mayor Russell's Violation of the Plaintiffs' Civil Rights." *Id.* at 161. And Count 15 is entitled "Aiding and Abetting Mayor Russell's Violation of the Plaintiffs' Civil Rights with Actual Malice." *Id.* at 162. Count 16 was somewhat ambiguous, bearing the title "Declaratory Judgment Against the [Publisher]." *Id.* But the motion to amend resolved any ambiguity by stating: "Lastly, the Fifth Claim is a declaratory judgment claim for violation of the plaintiffs' civil rights without a claim for damages as suggested by Judge Pierre N. Leval . . . ." *Id.* at 120 (Pls.' Renewed Mot. to Amend Am. Compl. at 3, *Meadows at Buena Vista, Inc. v. Town of Buena Vista*, No. 1:10-cv-02871-MSK-KMT (D. Colo. Feb. 7, 2011)). The proposed Third Amended Complaint stated the same claims, although supplemented by additional factual allegations. In particular, the titles of counts 12, 13, 14, and 15 still expressly stated that they were civil-rights claims (in language essentially identical to the claims in the proposed First Amended Complaint), and the language of Count 16, the declaratory-judgment claim, was unchanged except for the paragraph numbering.

On September 19, 2011, the district court granted the Publisher's motion to dismiss the amended complaint filed in November 2010. And two weeks later the magistrate judge recommended that Meadows' pending motion to file a Third Amended Complaint be denied as moot in light of the district court's dismissal of the Publisher from the action.

On February 15, 2012, the district court adopted the magistrate judge's recommendation to deny the motion to amend, but for different reasons. It said that Meadows' motion to amend had not been mooted but concluded that the proposed Third Amended Complaint had not adequately alleged a plausible constitutional violation by Russell, rendering amendment futile.[1] First, it explained that Meadows had failed to allege a protected property interest, as is required for a due-process claim, because it did not allege a legitimate expectation that the Town would approve its development plan. Even assuming a protected interest, the court continued, Meadows failed to allege a deprivation of either procedural or substantive due process with respect to that interest, because it identified neither specific procedural requirements that had been denied (to support its procedural-due-process claim) nor a conscience-shocking arbitrary deprivation of property rights (to support its substantive-due-process claim). Finally, the court observed that Meadows did not allege that Russell made the decision to deny its application or that Russell's actions caused the application to be defeated, except for the conclusory assertion that the column caused the referendum's defeat. Thus, the court denied the motion to amend and dismissed all claims against the Publisher with prejudice. *See* Op. & Order Following

[1] The court ruled that Meadows's claims also failed because they did not adequately allege an agreement or concerted action between Russell and the Publisher, or that Russell had acted under color of state law. Because we agree with the court's ruling on the underlying constitutional violations, we need not consider these alternative bases.

Recommendation by Mag. J., *Meadows at Buena Vista, Inc.*, No. 1:10-cv-02871-MSK-KMT (D. Colo. Feb. 15, 2012) (District Court Opinion).

Meadows argues on appeal that the district court erred in not permitting it to file the proposed Third Amended Complaint.

## II. DISCUSSION

"Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the trial court may deny leave to amend where amendment would be futile." *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1117 (10th Cir. 2009) (internal quotation marks omitted). We ordinarily review the denial of leave to amend for abuse of discretion, but "[w]hen denial is based on a determination that amendment would be futile, our review for abuse of discretion includes de novo review of the legal basis for the finding of futility." *Id.* (internal quotation marks omitted). Because the district court based its finding of futility on the Third Amended Complaint's failure to state a claim that could survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we review that determination de novo.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Al-Owhali v. Holder*, 687 F.3d 1236, 1239 (10th Cir. 2012) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

at 1239–40 (internal quotation marks omitted). "Although we must accept as true all factual allegations asserted in the complaint, dismissal is appropriate where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 1240 (internal quotation marks omitted).

Counsel for Meadows suggested at oral argument that the proposed Third Amended Complaint had stated a claim against the Publisher for conspiring with or aiding and abetting Russell in acts of tortious interference with contract. But, as previously summarized, Counts 12, 13, 14, and 15 have always been expressly limited to civil-rights claims, and the initial motion to add count 16 explained unambiguously that it was solely a civil-rights claim. Moreover, the district court's decision refusing to permit filing of the Third Amended Complaint stated that the declaratory-judgment claim "is repetitive of" the four other claims challenged, Aplt. App. at 451 (District Court Opinion at 20), and Meadows' briefs on appeal do not confront the district court's characterization of this claim. We therefore reject Meadows' suggestion at oral argument that it raised common-law claims against the Publisher. *Cf. Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1086–87 (10th Cir. 2006) (appellant waived argument that was not adequately briefed but raised for first time at oral argument).

We turn now to Meadows' claims that the Publisher conspired with Russell in violating Meadows' civil rights. Like the district court, we construe these claims as arising under 42 U.S.C. § 1983. "To state a claim under 42 U.S.C.

§ 1983 a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (brackets and internal quotation marks omitted). Because the Publisher is a private entity, Meadows must plead that Russell committed a constitutional violation. *See Wilson v. Price*, 624 F.3d 389, 394 (7th Cir. 2010) (private citizen may not be liable under § 1983 unless he or she becomes a public officer pro tem or conspires with respect to a constitutional violation by a public employee).

We hold that the judgment of the district court must be affirmed on the ground that Meadows did not adequately plead that Russell had violated its constitutional rights. To begin with, Meadows' opening brief on appeal does not challenge the district court's conclusions regarding Russell's alleged constitutional violations. In its reply brief, Meadows asserts that such a challenge was unnecessary because the issue of underlying due-process deprivations was actually "resolved *adversely* to [the Publisher] in the district court." Aplt. Reply Br. at 12 (emphasis added). It points to the magistrate judge's March 18, 2011, report and recommendation that Meadows be allowed to amend its claims against Russell but not its claims against the Publisher; in that recommendation the magistrate judge opined "that Plaintiffs have alleged sufficient facts to state a claim" that Russell had violated Meadows' civil rights. Aplt. App. at 212

-10-

(internal quotation marks omitted) (Recommendation of U.S. Mag. J. at 7, *Meadows at Buena Vista, Inc.*, Civ. A. No. 10-cv-02871-MSK-KMT (D. Colo. Mar. 18, 2011)). Meadows argues that because the Publisher did not object to this recommendation, the firm-waiver rule precludes the Publisher from arguing on appeal that Meadows did not adequately plead constitutional violations. *See Cohen v. Longshore*, 621 F.3d 1311, 1318 (10th Cir. 2010) (under firm-waiver rule, "failure to make timely objections to the [magistrate judge's] findings or recommendations waives appellate review of both factual and legal questions" (internal quotation marks omitted)).

But even if the district court had previously endorsed the magistrate judge's view that the amended complaint adequately alleged constitutional violations by Russell, a district court is not bound by its own rulings made before final judgment. *See Nw. Cent. Pipeline Corp. v. JER P'ship*, 943 F.2d 1219, 1225 (10th Cir. 1991) ("Until final decree the court always retains jurisdiction to modify or rescind a prior interlocutory order." (internal quotation marks omitted)); 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478.1, at 692 (2d ed. 2002) ("[U]ntil the court expressly directs entry of final judgment, an order that resolves fewer than all of the claims among all of the parties 'is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.'" (quoting pre-restyling version of Fed. R. Civ. P. 54(b) (2002))).

And the district court's final decision made clear that it was addressing the issue afresh. It wrote:

> Because review of Plaintiff's Motion to Amend and proposed Third Amended Complaint is *de novo*, the referent is not this Court's prior ruling addressing prior proposed amendments to a prior complaint. Rather, the issue is whether the proposed Third Amended Complaint contains sufficient factual allegations that, taken as true, state plausible claims against [the Publisher].

Aplt. App. at 441 (District Court Opinion at 10). Because Meadows failed to challenge in its opening brief the district court's ruling that it had not adequately alleged that Russell violated the Publisher's constitutional rights, Meadows waived the opportunity to contest the ruling. *See United States v. De Vaughn*, 694 F.3d 1141, 1154–55 (10th Cir. 2012) ("It is well-settled that arguments inadequately briefed in the opening brief are waived." (internal quotation marks omitted)).

Further, even had Meadows not waived the argument that its Third Amended Complaint alleged underlying constitutional violations by Russell, we are not persuaded by the argument. As we read the proposed Third Amended Complaint, it attempts to state a violation of constitutional due process by alleging (1) that Russell refused to recuse herself from the annexation application process despite her alleged conflict of interest, and (2) that the application process was "quasi-judicial" in nature and her writing an opinion column for the local newspaper "delegated to herself the opportunity to make an *ex parte* closing

-12-

argument." Aplt. App. at 313 (Third Am. Compl. at 44, *Meadows at Buena Vista, Inc.*, Civ. A. No. 10-cv-02871-MSK-KMT (D. Colo. July 14, 2011)).

Neither of Meadows' theories passes muster. Even if Russell labored under a conflict of interest, her participation in the application process could not have deprived Meadows of due-process rights because Russell did not possess any official authority regarding Meadows' application. *See Koch v. City of Hutchinson*, 814 F.2d 1489, 1495–96 (10th Cir. 1987) (plaintiff claimed that demotion violated his constitutional rights; defendant city commissioners not liable because the city code empowered the city manager, not the commissioners, to take such actions), *vacated and modified on other grounds*, 847 F.2d 1436 (en banc) (1988). As Meadows specifically pleaded, Russell was not entitled to vote on the trustees' decisions approving the application or adopting the resolution to endorse the ballot measure, and she made no statements at the meetings at which those votes were held.

Likewise, Russell's submission of an opinion column urging her constituents to vote against the proposed development was protected speech. *Cf. Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1099 (10th Cir. 2006) (en banc) ("The First Amendment undoubtedly protects the political speech that typically attends an initiative campaign, just as it does speech intended to influence other political decisions."). Freedom of speech on public issues is not denied to those who may have reasons other than the public interest in favoring

one position over another. Nor is it denied to those who may have greater influence over public opinion than others do. We are aware of no authority, and would be surprised to find any, supporting Meadows' theory that such an expression of opinion by a public official can constitute an "*ex parte* closing argument" in violation of due-process rights.

## III.  CONCLUSION

We AFFIRM the district court's judgment denying Meadows' motion to amend and dismissing Meadows' claims against the Publisher with prejudice.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge