**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 26, 2016
Decided May 4, 2016

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-3342

|  |  |
|---|---|
| | Appeal from the |
| | United States District Court for the |
| TIMOTHY VANDER PLAATS, | Northern District of Indiana, |
| *Plaintiff-Appellant,* | Hammond Division at Lafayette. |
| | |
| *v.* | No. 4:14-CV-9 JTM |
| | |
| MICHAEL BARTHELEMY, | James T. Moody, |
| *Defendant-Appellee.* | *Judge.* |

## O R D E R

Timothy Vander Plaats appeals the grant of summary judgment on his claim that a police officer from Lafayette, Indiana, violated his Fourth Amendment rights by attacking him following a personal dispute. He contends that the district court erred both procedurally and substantively when it concluded that the evidence did not allow a reasonable inference that the police officer was acting under color of state law. Because the district court made no errors, we affirm.

The following facts, which culminate in a violent attack, are undisputed. Vander Plaats went to a bar on January 21, 2012, after a work party. While there, he saw Amanda Shorter (now Amanda Barthelemy), a professional acquaintance of his. The

two spoke briefly and hugged. Shorter mentioned that her fiancé, defendant Michael Barthelemy, was also at the bar. After they separated, Vander Plaats texted Shorter the message, "Hi," and then phoned her.

These interactions angered Barthelemy, a police officer. He thought that Vander Plaats had been inappropriately calling and texting his fiancée late at night over the previous year to two years, even after she had requested that all interactions be strictly professional. Using his personal cell phone, Barthelemy called Vander Plaats, who had already left the bar, to berate him. He scolded Vander Plaats, "You fucking pussy, you got a lot of balls calling while we're sitting in the room," and, "Why don't you come back [to the bar]."

Vander Plaats received more harassing calls that night. Barthelemy remained at the bar and spoke with fellow police officers, including Charles Williams and Nathan LaMar. Like Barthelemy, they were off duty, out of uniform, and had driven to the bar in their own cars. Using his personal phone, LaMar called Vander Plaats and derided his T-shirt size, asked if Vander Plaats wanted someone to "pull his hose," and falsely identified himself as a firefighter when Vander Plaats asked if he was a police officer. Williams then called, also using his own phone, and left a threatening voicemail:

> Hi Tim. This is Bobby. I just wanted to tell you that you're a huge fuckin' douche bag, and I swear to God if I hear your name again I'm going to fucking kill you. And it's not gonna be awesome, I mean it's gonna be like, little body parts in a fireplace kind of death, and that's really gonna suck. So—I would just kinda crawl into a hole today [inaudible] for awhile [sic], or—[inaudible]. Thanks.

Vander Plaats sought to end the harassment. After receiving the voicemail, he texted Shorter, advising, "You should tell them to stop, I could make this very ugly. I feel everyone wants to stay gainfully employed in this economy!" The following Monday, he contacted the Lafayette Police Department to report the officers' behavior. The Department launched both Internal Affairs and criminal investigations. Internal Affairs interviewed Barthelemy, Williams, LaMar, and Ronald Dombkowski, another police officer who was at the bar. Dombkowski stated that he had told Barthelemy that Vander Plaats needed to "get the message" that "he can't fuck with a cop's family."

About a week after Vander Plaats reported the incident, he was attacked. While walking near his home, someone shouted his name. He entered a parking lot and saw two men he did not recognize dressed in hoodies. A third man, also in street clothes, hit

him in the face and threw him to the ground before knocking him unconscious. When he regained consciousness, he called his girlfriend, who took him to the hospital. They called the police from the hospital, and Vander Plaats told the officer that Barthelemy was the only person with whom he had any personal disputes. The officer notified Barthelemy as well as his superior officers that he had been named in a report of battery. Barthelemy denied any involvement in the battery. He was on duty the evening of the attack, and officers on his shift attested that he had been working with them, in uniform.

The next day, Internal Affairs finished its investigation. It reprimanded Barthelemy for unbecoming conduct. Williams was suspended for five days and LaMar for one day for unbecoming conduct and not conforming to the laws. The special prosecutor did not bring any criminal charges.

Vander Plaats then sued the City of Lafayette and Williams in state court. He alleged negligent retention and training, intentional infliction of emotional distress, and negligence. Later adding Barthelemy as a defendant, he alleged that the officer had violated his Fourth Amendment rights by committing the battery. The defendants removed the case to federal court and moved for summary judgment on all claims. After briefing was completed, the district court also "move[d], sua sponte, for summary judgment on plaintiff's § 1983 claim against Barthelemy," suggesting that "a reasonable fact-finder could [not] conclude that Barthelemy acted under color of state law when he allegedly assaulted plaintiff." The judge ordered supplemental briefing on that issue. After the supplemental briefs were filed, the judge granted summary judgment on the federal claim, reasoning that the alleged battery had not been under color of state law. The judge then relinquished supplemental jurisdiction over the state-law claims.

On appeal Vander Plaats first argues, unpersuasively, that the district court erred by granting summary judgment on an issue not raised by the defendants. Rule 56 of the Federal Rules of Civil Procedure allows summary judgment on the court's own motion as long as the court notified Vander Plaats of the potentially dispositive issue and gave him an opportunity to respond. *See* FED. R. CIV. P. 56(f); *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986*); Lalowski v. City of Des Plaines*, 789 F.3d 784, 794 (7th Cir. 2015). Both occurred here. The judge told the parties that he questioned whether a reasonable fact finder could find that Barthelemy was acting under color of state law when he allegedly attacked Vander Plaats. And the judge gave the parties the opportunity to file additional briefs on this issue, which they did. No procedural error occurred.

Vander Plaats next argues that the district court erred in ruling that no reasonable jury could find that Barthelemy was acting under color of state law during the battery. "Action is taken under color of state law when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Honaker v. Smith*, 256 F.3d 477, 484 (7th Cir. 2001) (internal quotation marks and citation omitted). But because "under 'color' of law means under 'pretense' of law," any "acts of officers in the ambit of their personal pursuits are plainly excluded." *Screws v. United States*, 325 U.S. 91, 111 (1945). Section 1983 does not cover disputes between private citizens, even if one happens to be an officer. *See Wilson v. Price*, 624 F.3d 389, 392, 394 (7th Cir. 2010); *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 515–16 (7th Cir. 2007).

Vander Plaats furnished no evidence that Barthelemy acted as a police officer, rather than a private citizen, during the attack. Even if this court assumes that Barthelemy was one of the attackers, under Vander Plaats's version of events, Barthelemy attacked him as a civilian to punish him for his relationship with Shorter rather than to pursue a law-enforcement objective. The attackers attempted no arrest, wore no uniforms, and never identified themselves as police officers. To the contrary, Vander Plaats said they wore street clothes and hoodies, did not identify themselves, and did not even speak to him except to call his name. The police department scheduled Barthelemy to be on duty at the time of the attack, but it is an officer's actions, not the work-duty status of an officer at the time of an incident, that determines whether conduct is under "color of law." *See Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995); *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990). And as Vander Plaats describes the event, Barthelemy kept himself anonymous and thereby disconnected himself from law enforcement during the attack.

Without evidence that the attacker used his government position and resources or purported to enforce any law, the attack is not under color of law. *See Wilson*, 624 F.3d at 394 (alderman not acting under color of state law when he beat a man because, in part, there was no evidence he identified himself as an alderman); *Latuszkin v. City of Chicago*, 250 F.3d 502, 505–06 (7th Cir. 2001) (police officer not acting under color of state law when he drove drunk in personal vehicle, did not "display[] any police power," and did not "possess[] any indicia of his office" at time of accident); *Townsend v. Moya*, 291 F.3d 859, 862 (5th Cir. 2002) (prison guard not acting under color of state law when he cut an inmate because the two were engaged in "horseplay"); *Barna v. City of Perth Amboy*, 42 F.3d 809, 817–18 (3d Cir. 1994) (police officers not acting under color of state law when they did not identify themselves as off-duty officers even

though police-issued weapon was used); *Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981) (police chief not acting under color of state law when he attacked his sister-in-law over personal matters even though attack was at police station).

Vander Plaats offers one reply, but it is unavailing. He contends that events *before* the attack suggest that Barthelemy was pursuing police action. He observes that Dombkowski had told Barthelemy to teach Vander Plaats that he cannot "fuck" with a cop's family. And, he adds, the police department did nothing before the attack to prevent Barthelemy from imposing "street justice" on Vander Plaats, despite knowing about Dombkowski's advice and the officers' earlier, threatening calls from the bar. Therefore, he concludes, Barthelemy "was clothed with authority" from the LaFayette Police Department to pursue him. But this argument is factually and legally wrong. The Lafayette Police Department and a special prosecutor were doing something before the attack: they were investigating the officers for making threatening phone calls. The record does not support the inference that the Department authorized Barthelemy's alleged actions. But even if the Department failed to do enough to prevent the attack, "acts by a state officer are not made under color of state law unless they are related in some way to the performance of the duties of the state office." *Burrell v. City of Mattoon*, 378 F.3d 642, 649 (7th Cir. 2004). Vander Plaats cannot transform the anonymous attack into official action simply by calling it "street justice." Even with that label, the attack remains unrelated to Barthelemy's duties as a police officer. The battery therefore was not under "color of law."

AFFIRMED.